CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

THOMAS MUEHLECK #3591
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96580
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
Email: tom.muehleck@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | CR. NO. 22-00060 LEK |
|---|---|---|
| Plaintiff, | )<br>)<br>) | UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION FOR REVOCATION OF DETENTION ORDER AND APPEAL OF DETENTION ORDER, EXHIBITS 1-6; CERTIFICATE OF SERVICE |
| vs. | )<br>) | |
| WALTER GLENN PRIMROSE, (01)<br>aka "Bobby Edward Fort"<br>GWYNN DARLE MORRISON, (02)<br>aka "Julie Lyn Montague | )<br>)<br>)<br>) | |
| Defendants. | )<br>)<br>) | DATE: August 22, 2022<br>TIME: 12:00 PM<br>JUDGE: Leslie E. Kobayashi |

UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION
FOR REVOCATION OF DENTENTION ORDER AND APPEAL OF
DETENTION ORDER

# TABLE OF CONTENTS

Page(s)

BACKGROUND ............................................................................................................. 1

ARGUMENT ................................................................................................................. 1

    A.    Both Defendants Are Flight Risks ............................................................... 1

    B.    Defendants' Recorded Conversations Raise Additional Concerns ................... 5

    C.    Consideration of History and Characteristics of the Person – 18 U.S.C. § 3142 (g)(3) .............................................................................................. 8

    D.    Consideration of the History and Characteristics of Defendant Gwynn Darle Morrison ................................................................................................. 11

    E.    Defendant Walter Glenn Primrose Would Pose a Serious Risk of Obstruction of Justice If Released ............................................................. 13

CONCLUSION ............................................................................................................ 14

# TABLE OF AUTHORITIES

Statutes                                                                                          Page(s)

18 U.S.C. § 142 ................................................................................................. 13

18 U.S.C § 3142 ............................................................................................. 1, 8

COMES NOW the United States of America, by and through the United States Attorney for the District of Hawaii, and hereby files its Opposition to Defendants' Motion for Revocation of Detention Order.

BACKGROUND

On July 28, 2022, United States Magistrate Judge Rom A. Trader ordered Defendant Walter Glenn Primrose held in pretrial confinement as the Court found by a preponderance of the evidence that there were no conditions or combination of conditions of release that would reasonably assure the appearance of the Defendant as required. On August 2, 2022, United States Magistrate Judge Rom A. Trader ordered Defendant Gwynn Darle Morrison held in pretrial confinement as the Court found by preponderance of evidence that there were no conditions or combination of conditions that would reasonably assure the appearance of Defendant Morrison as required. On August 11, 2022, Defendant Primrose moved for Revocation of the Order and Appealed the Detention Order. On August 15, 2022, Defendant Morrison joined in Defendant Primrose's motion for revocation of detention order and appeal of detention order.

ARGUMENT

A.  Both Defendants Are Flight Risks

Counsel for Defendant Primrose argues that the consideration of the factor under 18 U.S.C. § 3142 (g)(3) – of the history and characteristics of Defendant

Primrose-strongly favors release. But consideration of Defendant Primrose's past 34 years reveals that he has been involved in a coordinated scheme with codefendant Morrison to live under a stolen identity. Since August 1987, Defendant Primrose, while living with Morrison, in Texas, Virginia, North Carolina, and Hawaii, has fraudulently obtained identification documents that have enabled Primrose and Morrison to live under the stolen identities of "Bobby Edward Fort" and "Julie Lyn Montague". Primrose was also stationed with the United States Coast Guard in Kodiak, Alaska, from June 2013 to July 2016 while Morrison was living in Hawaii.

On August 25, 1987, Primrose obtained from the Texas Department of Public Safety ("DPS") a Texas driver's license in the identity of Bobby Edward Fort and on September 10, 1987, Morrison obtained from Texas DPS a Texas identification card in the identity of Julie Lyn Montague.

On September 30, 1987, Primrose, utilizing the personal identification information belonging to the Bobby Edward Fort identity, applied for and was issued a social security account number in the Bobby Edward Fort identity. Morrison obtained a social security account number in the identity of Julie Lyn Montague on October 26, 1987, by utilizing the personal identification information of Julie Lyn Montague in a Social Security -5 Application Form.

Over this 34-year period, Primrose has obtained five passports and one passport card in the Bobby Fort identity. On November 19, 1996, Primrose and Morrison both applied in person with the County Clerk of Pasquotank County, North Carolina, for passports in their stolen identities. Almost ten years later, on October 30, 2006, Primrose and Morrison mailed from Hawaii, applications to renew their passports in their stolen identities.

Since 1987, Primrose has misrepresented himself, provided false statements, information, and documents to the following agencies:

1. Texas Department of Public Safety (issued Driver's License in Bobby Fort identity);
2. Hawaii Department of Transportation (Issued Hawaii Drivers Licenses in Bobby Fort identity);
3. North Carolina Department of Transportation (Issued N.C. Drivers License in Bobby Fort identity);
4. Department of Homeland Security (Executed DHS I-9 form to prove eligibility of employment for most recent job, using the personal identification information of Bobby Fort and passport issued to PRIMROSE in Bobby Fort identity);
5. U.S. Coast Guard (Enlisted as "Bobby Fort"; provided false statements, documents, and created false background to deceive Coast Guard recruiter and background investigators in order to fraudulently enlist in the Coast Guard and to access Coast Guard and other DOD facilities and systems, in "Bobby Fort" identity);
6. U.S. Customs and Border Protection (Obtained Global Entry Card in Bobby Fort identity from CBP, travelled internationally and presented fraudulent passport to CBP on several occasions);
7. U.S. Department of State (Executed 5 U.S. passport applications in Bobby Fort identity, received (3) tourist passports and (2) U.S. Official passports in false identity);
8. U.S. Department of Defense (Executed several DOD forms to gain access to facilities and protected information systems, including DOD forms to enable his co-conspirator (Gwynn Morrison) to unlawfully obtain DOD

3

Identification cards which allowed Morrison to access DOD facilities and obtain benefits);
9. U.S. Office of Personnel Management (Executed SF-86 forms to apply for National Security Positions that required government clearances, as a result of this fraud Primrose was granted a Secret clearance in the false identity of Bobby Fort);
10. Social Security Administration (Executed social security forms to unlawfully obtain a social security account and number in the false identity of "Bobby Fort." Primrose used this number over 3 decades to fraudulently open bank accounts, apply for loans, employment, travel documents, to obtain state IDs, and to register to vote;
11. U.S. Federal Aviation Administration (Obtained a private pilot's license in the false identity of Bobby Fort);
12. U.S. Federal Communications Commission (Obtained radio operator licenses in the false identity of Bobby Fort);
13. U.S. Department of Veterans Affairs (executed VA forms in the Bobby Fort identity to claim compensation for his service in the Coast Guard, , as a result, Primrose is currently receiving monthly compensation in "Bobby Fort" identity from the VA);
14. U.S. Postal Service (Executed USPS forms to establish post office boxes in the false identity of Bobby Fort where he currently receives mail in his false identity);
15. U.S. Department of Transportation (Provided false identification documents to the Transportation Security Administration to facilitate travel in the U.S. and abroad under the Bobby Fort identity);
16. State of Hawaii Department of Commerce and Consumer Affairs (Registered a business with the State of Hawaii under the false identity of Bobby Fort);

Primrose's counsel argues that "there is nothing about the nature and circumstances of the alleged commission of the offenses that warrant detention, including the amount of time that has passed since Mr. Primrose's alleged stealing of and changing identities." Primrose Motion p.21. Defendant Primrose's counsel also argues that "a benign reason could very well explain the genesis of his offense. It could be the case that, for example, Mr. Primrose assumed a new

4

identity to escape a bad situation while living in Texas … or several other non-salacious reasons not involving espionage." Primrose Motion 21.

Of course, Defendant Primrose has continued to use the Bobby Fort stolen identity up to the present time. On February 12, 2021, Primrose submitted to the Coast Guard a Systems Authorization Access Request-DD Form 2875 as Bobby Fort, seeking access to a United States Government classified system at the secret level. Primrose was ultimately granted access to this system as user "Bobby Fort." As recently as March 3, 2022, Primrose submitted a Hawaii driver's license renewal application using the Bobby Fort identity. *See* Exhibit 1. In response to Defendant Primrose's application, the Hawaii Department of Transportation issued the Defendant a renewed driver's license.

B.  Defendants' Recorded Conversations Raise Additional Concerns

Defendant Primrose was arrested at his workplace at the U.S Coast Guard Air Station at Barbers Point on the morning of July 22, 2022. Primrose was advised of his constitutional rights and signed a written waiver of those rights. Primrose also signed a Garrity waiver form. Primrose was shown pictures of a younger Walter Primrose and a physical copy of the Walter Glenn Primrose passport issued in 1987. Primrose was told that the FBI wanted to talk about "Walter". During the interview Primrose volunteered that they (he and Morrison)

had not murdered anyone, had not robbed a bank and were not working for the Russians or Ukrainians.

Defendant Morrison was arrested at the Defendants' residence in Kapolei on the morning of July 22, 2022. Morrison was advised that she and Walter Primrose were arrested for assuming the identity of another person.

While Defendant Primrose was questioned by the FBI about a trip to St. Johns, Canada, the Defendants were not accused of or questioned about espionage activities or meeting with or communicating with Russians or foreign agents.

Counsel for Defendant Primrose argues that "although the government has made allegations about Mr. Primrose's supposed connections to Russia and the KGB, they are purely theoretical. Primrose Motion p.23. But such evidence does exist.

Following Defendant Primrose's arrest at the U.S Coast Guard Air Station at Barbers Point he was transported to the FBI headquarters in Kapolei and placed in a holding room where Defendant Morrison was being held following her arrest. The Defendants were alone in the room and were video and audio recorded. Counsel for both Defendants have been provided with a copy of that video/audio recording. During their conversations the Defendants lowered their voices and at times whispered to each other. At times, Primrose snapped his fingers while

talking with Morrison. A copy of the draft transcript of the Defendants' conversations has been provided to counsel for both Defendants.

The recording and the transcript show that shortly after being placed together Defendant Primrose complained to Defendant Morrison that federal agents might be recording them and that the federal agents had gone back more than 35 years in their investigation of the Defendants. Morrison then told Primrose that "we have the protocols – we have protocols". "We have protocols (unintelligible) used in a case (unintelligible). Exhibit 2. Later during their detention in the FBI holding room, Primrose told Morrison that the FBI asked about the trip they had taken to St. Johns. Primrose told Morrison that its quite possible that they [the FBI] were talking to OPM and think that there's a maybe it's a mole or something like that – and maybe we were approached at some time… Exhibit 3. Even later during their detention Morrison wondered aloud how the investigation got started, who really hated them and who would start an investigation like this. Morrison then said to Primrose "well yes unless, (whispering) unless they say we were agents of a foreign power." Exhibit 4.

The FBI knows that foreign intelligence services have protocols that they teach their agents and those recruited by their agents to follow if they are ever apprehended. The FBI is also aware that the term "mole" can refer to a foreign agent/ spy that is deeply and safely embedded in a targeted society. Additionally,

7

Morrison's whispered statement to Primrose that the person who initiated the investigation must have said that they were agents of a foreign power directly raises the possibility that the Defendants have been employed by a foreign country.

For the Defendant's to have made these statements when they were simply being asked about nothing more than the theft of another person's identity is highly relevant and is consistent with espionage.

C.     <u>Consideration of History and Characteristics of the Person – 18 U.S.C. § 3142 (g)(3)</u>

Defendant's counsel claims that the Government cannot prove by a preponderance of the evidence that Defendant Primrose is a serious flight risk. Primrose Motion p. 6  Primrose's counsel argues that Defendant's security clearance demonstrates that the Coast Guard and his subsequent employer entrusted Primrose with such a clearance "because he was a valued, important and high- ranking employee."  Primrose Motion p.6  Defendant's counsel further argues that "the government has proffered zero evidence that Mr. Primrose has ever communicated with any foreign adversary."  Primrose Motion pg. 6. Defendant's counsel also argues that "Mr. Primrose was never, not once, reprimanded, punished or discharged by the Coast Guard", and that "his personnel files are devoid of disciplinary issues, reprimands, or any other concerns." Primrose Motion p.7, 10

In fact, the secret clearances that Primrose obtained while in the Coast Guard and with his government employer were based on the false information Primrose presented on the SF-86 – Questionnaire for National Security Position- that he submitted in 2004, 2014, and 2016. Counsel for both Defendants have been provided with copies of those documents. Primrose claimed to be Bobby Fort, used Fort's date of birth, place of birth and social security number to obtain the secret clearances. Primrose also provided false information about his family members. Additionally, Primrose's enlistment in the Coast Guard as Bobby Fort with Fort's date of birth was a fraudulent enlistment based on the foundation of false information that Primrose began building in 1987. Defendant Primrose's Coast Guard personnel file is not "devoid of disciplinary issues, reprimands or other concerns." The Coast Guard is seriously considering recharacterizing his Honorable discharge based upon a fraudulent enlistment. Furthermore, the Coast Guard Pay and Personnel Center has suspended Primrose's right to retirement pay pending a final decision by Coast Guard Headquarters. See Exhibit 5 (previously provided to Primrose's counsel).

While the United States does not have presently have evidence that Defendant Primrose ever communicated with any foreign adversary, a search of the Defendant's government classified account is ongoing. Additionally, federal agents seized numerous devices during the execution of the search warrant at

9

Defendant's residence, including five laptops, six cellphones, computer hard drives, sim cards, and discs. The forensic examination of those devices are ongoing.

However, this case is much more than someone who has a security clearance who has been recorded making suspicious comments about something that has nothing to do with the nature of the crime with which he is charged. Here, both Defendants are skilled at stealing identities and utilizing those identities, to obtain benefits to which they have not been entitled, over a period of 34 years. Who knows what other false identities or false identification documents the Defendants may have hidden elsewhere.

Defendant Primrose has been terminated by his government contractor employer and his retirement pay has been suspended. Since the Defendants' houses in Kapolei were both financed under their false identities the Defendants have committed bank fraud and those properties are forfeitable. Primrose also told Morrison during their detention at the FBI Headquarters that they had lost everything. Exhibit 2.

There is really no reason for Defendant Primrose to stay in Hawaii, he has lost everything, he would be motivated to leave the jurisdiction and as he is a certified pilot, he could use an aircraft to escape.

D.  Consideration of the History and Characteristics of Defendant Gwynn Darle Morrison

Morrison was not simply just aware of the criminal activity perpetrated by Primrose but was a willing and active participant in the entire scheme. Morrison, at the same time as Primrose, began assuming the identity of a deceased person by obtaining the birth certificate of "Julie Lyn Montague", an actual person. During the same time Primrose was assuming his illegal identity, Morrison was building her own identity, by accruing a Texas identification card and establishing a social security account in the identity of Julie Lyn Montague. Over the next 3 decades, Morrison conspired with Primrose to obtain U.S. passports in their false identities, establish bank accounts, and apply for home loans and vehicles loans, with at least 10 financial institutions. Moreover, Morrison conspired with Primrose to establish a business -"Summer Sparrow"- in the state of Hawaii using their unlawfully assumed identities.

Similar to how Primrose created a false background, Morrison did the same. Morrison executed a U.S. passport application with the United States Department of State, wherein she claimed to have a sister with the initial C.C., evidence to the contrary was found. Additionally, Morrison created a resume that she submitted to the Navy Exchange for employment, wherein she stated that she attended Arizona State University (this information was false), and that she was a graduate of Lufkin High School, located in Lufkin, TX (this information was also false). Agents

discovered during the search of the Defendants' residence Morrison's Calhoun High School diploma and her diplomas from Stephan F. Austin University and Auburn University. Since 1987 – Morrison has misrepresented herself, provided false statements, information, and documents to the following agencies:

1. Texas Department of Public Safety (issued Driver's License in Julie Montague identity);
2. Hawaii Department of Transportation (issued Hawaii Drivers License in Julie Montague Identity);
3. North Carolina Department of Transportation (issued N.C. Drivers License in Julie Montague Identity);
4. Department of Homeland Security (Executed DHS I-9 form to prove eligibility of employment for most recent job, using Personal Identification Information of Julie Montague and passport issued to Morrison in Julie Lyn Montague identity);
5. U.S. Customs and Border Protection (presented fraudulent passport to CBP while traveling internationally using Julie Montague identity);
6. U.S. Department of State (Executed 3 U.S. passport applications in Julie Montague identity);
7. U.S. Department of Defense (Executed several DOD forms to obtain military dependent identification cards in order to access DOD facilities and benefits);
8. U.S. Department of the Navy (Executed several forms to apply for employment using the Julie Montague identity);
9. Social Security Administration (Executed social security forms to unlawfully obtain a social security account number in the false identity of "Julie Montague." Morrison fraudulently used this social security number over 3 decades to fraudulently open bank accounts, apply for loans, employment, travel documents, and state IDs);
10. U.S. Postal Service (Executed USPS forms to establish post office boxes in the false identity of Julie Montague where she currently receives mail in her false identity);
11. U.S. Department of Transportation (Provided false identification documents to the Transportation Security Administration to facilitate travel in the U.S. and abroad using fraudulently obtained documents in Julie Montague identity);
12. State of Hawaii Department of Commerce and Consumer Affairs

(Registered a business that was established in the false identity of Julie Montague, with the state of Hawaii).

A journal seized from Morrison's residence appears to contain her distinct handwriting and reads in part "Things I would take with me if I had to flee my present life (again?)." Exhibit 6.

E. <u>Defendant Walter Glenn Primrose Would Pose a Serious Risk of Obstruction of Justice If Released</u>

The United States believes that the Court should find that Defendant Primrose's release would pose a serious risk of obstruction of justice under 18 U.S.C. § 142 (f)(2)(B). The United States learned on August 14, 2022, that Defendant Primrose, on August 3, while in pretrial detention at the Honolulu Federal Detention Center, (FCD) approached a Bureau of Prisons Officer and asked to be able to communicate with his wife, Defendant Morrison, also an inmate at the FDC. Primrose was told by the BOP officer that he could request to communicate through email with Morrison and that it was a decision that the Warden would make. Defendant Primrose said that he would not want to put that on email and asked if the Chaplain or a staff member could relay something to his wife. The BOP officer told Primrose "No". Primrose said he tried to tell his attorney to call his wife's attorney and relay a message but was not sure if that had happened. The BOP officer then asked what message Primrose was trying to get to his wife. Primrose stated that he was trying to tell his wife not to admit certain things and to deny some things.

13

Clearly, Defendant Primrose, should he be released, would be able to obstruct justice by unlawfully influencing and intimidating witnesses.

CONCLUSION

This Court should find that the Defendants' character and activities over thirty-four years do not support their requests for release from pretrial confinement. The Court should deny Defendants' motion.

DATED: August 19, 2022, at Honolulu, Hawaii.

    Respectfully submitted,

    CLARE E. CONNORS
    United States Attorney
    District of Hawaii

By:   */s/ Thomas Muehleck*
    THOMAS MUEHLECK
    Assistant U.S. Attorney